IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INTERSTATE FIRE AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN TANK LEASING, INC., LOLA TATUM, Individually and as Next Friend of Her Husband DWIGHT TATUM, SANDY TATUM, LOLA (PRISCILLA) TATUM, DWIGHT TATUM, JR., and DWAYNE TATUM,<br><br>Defendants. | § | CIVIL ACTION NO. H-10-4908 |

MEMORANDUM AND ORDER

Pending is Plaintiff Interstate Fire and Casualty Company's Motion for Summary Judgment on the Duty to Defend (Document No. 37). After carefully considering the motion, responses, reply, and the applicable law, the Court concludes for the reasons that follow that the motion should be denied.

## I. Background

Plaintiff Interstate Fire and Casualty Company ("Interstate") seeks declaratory judgment that it has no duty to defend or indemnify Defendant Southern Tank Leasing, Inc. ("Southern") from claims filed by Defendants Lola Tatum, Individually and as Next Friend to Her Husband Dwight Tatum, Sandy Tatum, Lola (Priscilla) Tatum, Dwight Tatum, Jr., and Dwayne Tatum ("Tatum Defendants") in

Cause No. 10-CV-1877 pending in the 212nd Judicial District Court of Galveston County, Texas (the "Underlying Suit").[1]

The pleadings in the Underlying Suit allege that, on or about July 16, 2008, Dwight Tatum was working on top of a tank trailer ("trailer") in the course of his employment at Intergulf Corporation ("Intergulf") in Pasadena, Texas, when he fell from the trailer and struck his head and body on the pavement, sustaining serious permanent injuries, which "rendered him incompetent to handle his financial affairs and the tasks of daily living."[2]

The Tatum Defendants allege in the Underlying Suit that Southern "did in fact distribute, sell, and/or lease" the trailer to Intergulf, and sue Southern and others for defective design products liability based on "acts of omission and commission . . . which constituted negligence." They also seek damages from the University of Texas Medical Branch for alleged negligent handling of Mr. Tatum's skull cap.[3]

---

[1] The Underlying Suit is captioned: *Lola Tatum, Individually and as Next Friend of Her Husband, Dwight Tatum (An Incompetent Person); Sandy Tatum; Lola (Priscilla) Tatum; Dwight Tatum, Jr., and Dwayne Tatum v. Brenner Tank, LLC; Brenner Tank in its Common or Assumed Name; Brenner Tank Services, LLC; Brenner Tank Services in its Common or Assumed Name; Southern Tank Leasing, Inc.; Southern Tank Leasing in its Common or Assumed Name; University of Texas Medical Branch (Galveston); and UTMB in its Common or Assumed Name. See* Document No. 37, ex. 1 (First Amended Petition).

[2] Id., ex. 1 ¶¶ 18-20.

[3] Id., ex. 1 ¶¶ 26-35.

Southern carries a Commercial General Liability Insurance Policy ("Policy") through Interstate.[4] Pursuant to the Policy, Interstate agreed to provide a defense to Southern under a strict reservation of rights.[5] Interstate now seeks summary judgment that it owes no duty to defend or indemnify Southern, contending that the "auto" exclusion operates to bar coverage under the Policy. The motion requires the Court to construe the "auto" exclusion as applied to the allegations made against Southern in the Underlying Suit.

## II. Choice of Law

### A. Legal Standard

Federal courts apply the forum state's conflicts-of-law rules to determine what law governs. Klaxon Co. v. Stentor Elec. Mfg. Co., 61 S. Ct. 1020, 1021 (1941). Texas courts first determine whether there is a conflict between Texas law and the other potentially applicable law. *See* SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sciences, Inc., 128 S.W.3d 304, 314 (Tex. App.--Dallas 2004, no pet.) ("[W]e should first determine if the laws are in conflict. If the result would be the same under

---

[4] Document No. 37, ex. B (Interstate Policy No. AGL1401451, hereinafter "Policy").

[5] *See* Document No. 1, ex. C (Interstate Reservation of Rights Letter).

the laws of either jurisdiction, there is no need to resolve the choice of law question.").[6]

B. Discussion

The parties agree that either Texas or Alabama law governs and if there is a conflict between the two, Alabama law controls.[7] Both Texas and Alabama adhere to the general rule, commonly referred to in Texas as the "eight-corners rule," that a court looks to the allegations in the underlying suit and the insurance

---

[6] If there is a conflict in the law on an issue, Texas courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 188 to determine the law applicable to a contract dispute. Minn. Mining & Mfg. Co. v. Nishika Ltd., 953 S.W.2d 733, 735 (Tex. 1997); Caton v. Leach Corp., 896 F.2d 939, 943 (5th Cir. 1990); *see also* Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984). A determination of the "most significant relationship" to a state, when faced with a question of contract law, includes an analysis of:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 188 (1971). "Application of the most significant relationship analysis turns on the qualitative nature of the particular contacts with a state rather than the mere number of those contacts." Bailey v. Shell Western E&P, Inc., 609 F.3d 710, 722-723 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 428 (2010) (citing Gutierrez v. Collins, 583 S.W.2d 312, 319 (Tex. 1979)).

[7] *See* Document No. 37 at 19-22; Document No. 42 at 22.

policy to see if there is a duty to defend. *See* GuideOne Elite Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d 305, 308-09 (Tex. 2006); Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 528 (5th Cir. 2004) (citing King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002)); *accord* Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1063 (Ala. 2003); Ajdarodini v. State Auto Mut. Ins. Co., 628 So.2d 312, 313 (Ala. 1993) ("An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured.").

In 2004, the Fifth Circuit in Northfield Ins. Co. v. Loving Home Care, Inc. made its "Erie[8] guess" that the Texas Supreme Court "would not recognize any exception to the strict eight corners rule," but ventured that in the "unlikely situation that the Texas Supreme Court were to recognize an exception," it would only apply "'[1] when it is initially impossible to discern whether coverage is potentially implicated *and* [2] when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.'" 363 F.3d at 531 (emphasis in original).[9] The Texas Supreme Court still has never applied an

[8] Erie R.R. Co. v. Tompkins, 58 S. Ct. 817 (1938).

[9] For a survey and analysis of pre-Northfield Texas law on the role of extrinsic evidence in determining the duty to defend, *see* Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka,

exception to the eight-corners rule. The Fifth Circuit has done so, however, in a handful of cases,[10] but both the Fifth Circuit and the Texas Supreme Court have consistently held that no exception applies when it is possible to determine whether the underlying

---

L.L.P., 267 F. Supp. 2d 601, 612-22 (E.D. Tex. 2003) (Folsom, J.). Two years after Northfield, in GuideOne Elite Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d at 308-09, the Texas Supreme Court took note of and quoted the Fifth Circuit's Northfield mention of a possible narrow exception to the eight-corners rule, but declined to apply any exception because the extrinsic evidence was "relevant both to coverage and the merits and thus does not fit the above exception to the rule." Id. at 309. Later, in Ooida Risk Retention Group, Inc. v. Williams, the Fifth Circuit found that the Texas Supreme Court had in GuideOne "cited this language from Northfield with approval, though it held that the circumstances of the case before it did not meet the conditions of the exception," and further stated that "GuideOne supports our 'Erie guess' that the limited conditions of an exception to the eight-corners rule exists here." 579 F.3d 469, 475-76 (5th Cir. 2009) (applying the Northfield exception and allowing extrinsic evidence to decide the issue of whether there was a duty to defend). The so-called Northfield exception, however, is narrow and has not been applied by the Texas Supreme Court, which, after GuideOne, stated that GuideOne had not recognized an exception to the eight-corners rule. *See* Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co., 279 S.W.3d 650, 654 (Tex. 2009) ("Without recognizing an exception to the eight-corners rule, we held [in GuideOne] that any such exception would not extend to evidence that was relevant to both insurance coverage and the factual merits of the case as alleged by the third party plaintiff."). The Fifth Circuit's most recent guidance on this subject was in Gilbane Building Co. v. Admiral Ins. Co., in which it reiterated the strict eight-corners rule and observed that "[t]he Texas Supreme Court has refused to recognize an exception to the eight-corners rule even when everyone involved in the suit knows the true facts." 664 F.3d 589, 601 (5th Cir. 2011) (Elrod, J.) (citing Pine Oak Builders, 279 S.W.3d at 655).

[10] *See, e.g.*, W. Heritage Ins. Co. v. River Entm't, 998 F.2d 311 (5th Cir. 1993); John Deere Ins. Co. v. Truckin' U.S.A., 122 F.3d 270 (5th Cir. 1997); Ooida, 579 F.3d 469; Atlantic Cas. Ins. Co. v. Gonzalez, 402 F. App'x 953, 2010 WL 4813666 (5th Cir. Nov. 24, 2010) (unpublished op.) (noting that "Gonzalez has not contested . . . the use of this extrinsic evidence").

complaint potentially states a covered claim, Zurich American Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 498 (Tex. 2008), or the extrinsic facts go to the merits of the underlying action, Gilbane Building Co. v. Admiral Ins. Co., 664 F.3d 589, 601 (5th Cir. 2011), or the extrinsic facts would contradict the facts alleged in the suit, Pine Oak Builders v. Great American Lloyds, 279 S.W.3d 650, 654 (Tex. 2009). At minimum, when any of the narrow circumstances of the so-called Northfield exception are not met, "[the Court is] without authority to create an exception where the Texas Supreme Court has specifically declined to do so." Gilbane, 664 F.3d at 600 (citing SMI Owen Steel Co., Inc. v. Marsh USA, Inc., 520 F.3d 432, 442 (5th Cir. 2008)). In Texas, "[t]he scope of the duty to defend is interpreted broadly: 'Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.'" Nat'l Cas. Co. v. W. World Ins. Co., 669 F.3d 608, 612-613 (5th Cir. 2012) (quoting Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, 939 S.W.2d 139, 141 (Tex. 1997)).

Likewise, under Alabama law, "[i]f the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured."

Ladner and Co., Inc. v. S. Guar. Ins. Co., 347 So.2d 100, 102 (Ala. 1977) (citing Goldberg v. Lumber Mut. Cas. Ins. Co., 77 N.E.2d 131 (1948)). If the allegations against the insured do not on their face allege a covered occurrence, then Alabama recognizes an exception for consideration of extrinsic evidence when the extrinsic evidence demonstrates that the insurer has a duty to defend. The Alabama Supreme Court has summarized the law of its State as follows:

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence.

Tanner, 874 So.2d at 1065 (internal citations omitted). Accordingly, under Alabama law, if the Underlying Suit states an "occurrence" of "bodily injury" to which the Policy extends coverage and to which no exclusion applies, the insurer has the duty to defend, regardless of what extrinsic evidence would show.

Therefore, the first step in the analysis under either Texas or Alabama law is to examine the policy and the underlying suit. If the underlying suit states on its face at least one claim

covered under the policy, then an insurer has the duty to defend. Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 393 (5th Cir. 1995) ("Even if the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage." (citing Rhodes v. Chicago Ins. Co., 719 F.2d 116, 119 (5th Cir. 1983))); *accord* Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1010 (Ala. 2005) ("When a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy."). Thus, if the Underlying Suit states on its face a potentially covered claim, neither Texas nor Alabama law permits the Court to look to extrinsic evidence. *See* Zurich, 268 S.W.3d at 498; *accord* Tanner, 874 So.2d at 1065. Because the analysis in this case is the same under either law, "there is no need to resolve the conflict of law question." SAVA gumarska, 128 S.W.3d at 314.

## III. The Eight Corners

### A. The Policy

The Commercial General Liability Coverage Form, No. CG 00 01 07 98, under the Policy issued by Interstate to Southern, provides as follows:

**SECTION 1—COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages.

. . . . .

b. This insurance applies to "bodily injury" . . . only if:

(1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" . . . occurs during the policy period.

. . . . .

**2. Exclusions**

This insurance does not apply to:

. . . . .

**g. Aircraft, Auto or Watercraft**

"Bodily injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any . . ., "auto" . . . owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading" [hereinafter the "'auto' exclusion"].

. . . .

Policy at IFCC 00013, 00015.

B. The Underlying Suit

The Underlying Suit alleges:

> 29. At all times pertinent to this case, Defendant SOUTHERN TANK was in the business of distributing, selling and/or leasing tank trailers like the one from which DWIGHT TATUM fell, and said Defendant did in fact distribute, sell, and/or lease that tank trailer to Intergulf Corporation.
>
> 30. At the time SOUTHERN TANK distributed, sold, and/or leased the tank trailer in question to Intergulf Corporation, it had complete and actual knowledge of the defects in the tank trailer of which Plaintiffs complain, including, but not necessarily limited to, a total lack of fall protection and, accordingly, SOUTHERN TANK is not an "innocent seller" as that term is used in Chapter 82, Texas Civil Practice & Remedies Code[11] and is not entitled to the protections Chapter 82 provides to "innocent sellers."
>
> 31. At all times pertinent to this case, the tank trailer in question as designed was defective and unreasonabl[y] defective by virtue of the fact that it contained in its design absolutely no appropriate fall protection and contained absolutely nothing that would accommodate the addition of fall protection of any kind by Intergulf Corporation or DWIGHT TATUM.

---

[11] Chapter 82 of the Texas Civil Remedies Code defines "Products Liability" as:

> [A]ny action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM. CODE § 82.001(2) (West 2011).

> 32. The defective and unreasonably dangerous condition of the tank trailer in question was the proximate, producing and legal cause of DWIGHT TATUM's fall that resulted in the injuries complained of and of damages to each of the Plaintiffs in each of the capacities in which each sues, respectively, in an amount far in excess of the jurisdictional minimum of this Court.
>
> 33. The products Defendants (BRENNER TANK, BRENNER TANK SERVICES, and SOUTHERN TANK), and each of them, were guilty of acts of omission and commission, which, collectively and severally, constituted negligence and were proximate causes of the occurrence in question (DWIGHT TATUM's fall) and of the injuries suffered by DWIGHT TATUM and of Plaintiffs' damages.

Document No. 37, ex. 1 ¶¶ 29-33.

## IV. Discussion

The parties do not dispute that Tatum's accident was an "occurrence" that caused "bodily injury" as those terms are understood in the Policy[12] but do dispute whether the "auto"

---

[12] Southern points out that the Tatums apparently are asserting a products liability action against Southern. *See* Document No. 42 at 25 n.94. The Policy includes a limit of insurance for "Products-Completed Operations Aggregate Limit" for $2,000,000. *See* Policy at IFCC 00009. The Underlying Suit alleges, *inter alia*, that Southern was in the business of selling trailers, sold a trailer to Intergulf, knew of the defect in the tank trailer such that it could not be considered an "innocent seller" under Chapter 82 of the Texas Civil Remedies Code, and the alleged defect--a total lack of fall protection--was the proximate cause of Mr. Tatum's injuries. Document No. 37, ex. 1 ¶¶ 29-33. The Tatum Defendants thus state a cause of action for products liability against Southern that is one of the hazards covered by the Policy. *See* Policy at IFCC 00024-25; *see also* id. at 00009.

exclusion bars coverage of the "bodily injury" suffered by Tatum.[13] Because only the applicability of an exclusion is at issue, "the insurer bears the burden of establishing that the exclusion applies." Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, LLC, 620 F.3d 558, 562 (5th Cir. 2010) (citation omitted). The "auto" exclusion applies if the Underlying Suit alleges facts showing: (1) the injury arose from the use or operation of an "auto" and (2) the "auto" was "owned by" Southern.[14] The second prong of the exclusion--whether the "auto" was "owned by" Southern--gives rise to the contested issue of whether the Court may look to extrinsic evidence to determine whether Southern owned the "auto."[15]

The Underlying Suit contains no allegation that Southern owned the trailer. To the contrary, one of the Underlying Plaintiffs' allegations is that Southern *sold* the trailer. Interstate, in its Reply, urges the Court to find that Southern owned the trailer,

---

[13] *See* Document No. 37 at 5.

[14] *See* Policy at IFCC 00015 ("auto" exclusion); *see also* Document No. 37 at 17. Neither party asserts that the trailer was not an "auto," or that it was "operated by or rented or loaned to" Southern as an alternative to being "owned by" Southern under the Policy, or that either Intergulf or Tatum was an insured under the Policy.

[15] Interstate contends that extrinsic evidence is relevant to the inquiry of coverage in this case, because it would unequivocally show that Southern owned the trailer when Tatum was injured. *See* Document No. 37 at 19. Southern does not dispute that it owned the trailer at the time of the accident. *See* Document No. 42 at 11 n.39.

arguing that "if Southern distributed, sold or leased the trailer then it must have owned it."[16] The pleadings in the Underlying Suit, however, specifically allege only that Southern "distributed, sold and/or leased" the trailer to Intergulf, not that it owned it.[17] "[I]n analyzing this case, we may not infer additional facts that are not in the pleadings." Gilbane, 664 F.3d at 597; *see also* Pine Oak Builders, 279 S.W.3d at 655 ("We will not read facts into the pleadings. . . . Nor will we look outside the pleadings, or imagine factual scenarios which might trigger coverage." (quotation omitted)).

The inferences that arguably may be drawn from the pleadings in the Underlying Suit are competing inferences: (1) Interstate reasons that because Southern is alleged to have sold the trailer, one should infer that Southern at one time must have owned the trailer within the meaning of the "auto" exclusion clause; and (2) Southern reasons that because Southern is alleged to have sold the trailer, one should infer that at the time of the Policy "occurrence" when Tatum suffered bodily injury, the trailer was *not* owned by the insured within the meaning of the "auto" exclusion clause. The latter is the more plausible inference but, regardless, it is the inference that prevails because the pleadings must be construed liberally in favor of the insured and in favor of

---

[16] *See* Document No. 45 at 4.

[17] Document No. 37, ex. 1 ¶ 30.

coverage. *See* Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997); *accord* Perkins v. Hartford Ins. Grp., 932 F.2d 1392, 1395 (11th Cir. 1991).

As has been seen above, the Court may not consider extrinsic evidence that Southern did in fact own the trailer because that would contradict one set of facts alleged in the Underlying Suit, namely, that Southern had sold and therefore was not the owner of the trailer. *See e.g.* Pine Oak Builders, 279 S.W.3d at 654-55 (holding that introducing the fact that the subcontractor performed the faulty work, when pleadings omitted that fact, would contradict the pleadings). The Northfield exception for use of extrinsic evidence does not apply because it is not "initially impossible to discern [from the Underlying Suit] whether coverage is potentially implicated." Northfield, 363 F.3d at 531. It is. Moreover, the Court has no "authority to create an exception to the [eight-corners rule] where the Texas Supreme Court has specifically declined to do so." Gilbane, 664 F.3d at 600. Thus, because the Underlying Suit on its face states at least one claim against Southern to which the "auto" exclusion does not apply, Interstate has not shown itself entitled to summary judgment that it owes no duty to defend Southern.

## V. Duty to Indemnify

Under both Texas and Alabama law, the duty to indemnify is separate from the duty to defend. Colony Ins. Co. v. Peachtree Const., Ltd., 647 F.3d 248, 252 (5th Cir. 2011) (Texas); Tanner, 874 So.2d at 1063 (Alabama). "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless '*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.'" Northfield, 363 F.3d at 536 (quoting Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis in original)); *accord* Emp'rs Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc., 387 F. Supp. 2d 1205, 1211-12 (S.D. Ala. 2005) ("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability." (applying Alabama law)). To the extent that Interstate urges the Court to rule on the duty to indemnify, the Court denies the motion without prejudice as not ripe.

## VI. Order

For the reasons set forth above, it is hereby

ORDERED that Plaintiff Interstate Fire and Casualty Company's Motion for Summary Judgment on the Duty to Defend (Document No. 37)

is DENIED with respect to the duty to defend, and DENIED WITHOUT PREJUDICE as not ripe with respect to the duty to indemnify.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 12th day of April, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE